HENRY F. MILLER STORES COMPANY *vs.* ROSELAND, INCORPORATED.

Suffolk. March 17, 1927.— May 24, 1927.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Bills and Notes,* Consideration. *Mortgage,* Of real estate: consideration, validity. *Corporation,* Ultra vires.

One, who had substantially complete ownership of the capital stock of a corporation, used money and credit of the corporation to purchase land and erect an amusement establishment thereon and in doing so overdrew the corporation's account at a Rhode Island trust company to the extent of $73,000. He then organized an amusement corporation, practically all of its stock was assigned to him, and he conveyed to it the property, real and personal, of the amusement establishment. The bank commissioner of Rhode Island took possession of the property and business of the trust company and discovered the improper overdraft and thereupon its president agreed personally to assume responsibility for it. The stockholders of the amusement corporation then

voted to borrow $35,000 and to issue a note therefor secured by a mortgage on its property; and to borrow $30,000 and to issue a note therefor secured by a second mortgage on its property. Previously they had authorized a mortgage to their corporation's organizer for $5,000 to secure the repayment to him of what he had advanced on the purchase price of land of the corporation. Thereupon, when it had no other indebtedness, the amusement corporation issued a first mortgage to the trust company in the sum of $35,000, a second mortgage to the trust company's president in the sum of $30,000, and a third mortgage to its organizer in the sum of $5,000. The trust company's president by agreement assumed the responsibility for the overdraft of the first corporation and the mortgages all were assigned to him in consideration thereof. The property of the amusement corporation thereafter was placed in the hands of a receiver, and the trust company's president petitioned in the receivership proceedings for leave to foreclose the mortgages. The petition was allowed. *Held*, that

(1) The amusement corporation being the real beneficiary of the money advanced, the mortgages were founded on good and valid considerations;

(2) The transactions were not *ultra vires* the amusement corporation.

BILL IN EQUITY, filed in the Superior Court on July 16, 1926, for the appointment of a receiver of the property of Roseland, Incorporated, which for more than thirty days after demand had refused satisfaction of an execution issued on a judgment in favor of the plaintiff or to expose real estate or personal property for that purpose.

A receiver having been appointed, Frank D. McKendall was permitted to intervene and sought permission to foreclose certain mortgages described in the opinion. His petition was referred to a master. The master found that, as a result of votes of Roseland, Incorporated, described in the opinion, "a note for $35,000 was issued by Roseland, Incorporated, secured by a mortgage on its property, to the Cosmopolitan Trust Company, and another note in the sum of $30,000 was issued to Frank D. McKendall by Roseland, Incorporated, and secured by a mortgage. On the same date a mortgage, previously authorized at a meeting of the stockholders, in the sum of $5,000 was issued to John J. Nichols to secure repayment of an advance by him for the purchase price of a lot of land adjoining the property then held by Roseland, Incorporated. In securing McKendall for taking up the H. O. Rogers Silver Company bad checks, in the cir-

cumstances hereinafter described, Nichols, in addition to furnishing the mortgages to Roseland, Incorporated, turned over the $5,000 mortgage which he held to McKendall.

"On December 12, 1923, John J. Nichols of Taunton, the H. O. Rogers Silver Company, and Roseland, Incorporated, entered into a written agreement, which agreement set forth in writing the terms under which McKendall assumed the obligations of the H. O. Rogers Silver Company to the Cosmopolitan Trust Company of Rhode Island. . . . By the terms of this agreement McKendall was to make good the moneys due the Cosmopolitan Trust Company, and in return Nichols agreed to liquidate the advances made by McKendall, in weekly payments to McKendall. I find that McKendall has complied in every way with his part of the agreement, and has made good for all the bad checks held by the Cosmopolitan Trust Company. I find that the Cosmopolitan Trust Company has transferred to McKendall, by assignment, all of the mortgages given to it on November 28, 1923. I find that McKendall, today, holds these three mortgages for a good and valid consideration paid by him. I find that these mortgages were given by Roseland, Incorporated, by authority of the votes hereinbefore set forth, said mortgages having been given in order to borrow money for paying a debt owed by Roseland, Incorporated. Whether this indebtedness of Roseland, Incorporated, was incurred subsequent to the date of its incorporation cannot be said with any certainty, as the erection of Roseland extended over a substantial period prior to the incorporation of Roseland, Incorporated."

Other material facts found by the master are stated in the opinion. The petition was heard on the master's report by *Morton*, J., and a decree was entered permitting foreclosure of the mortgages. By leave of court, the receiver was permitted to appeal from the decree.

*R. B. Heavens*, (*M. L. Orlov* with him,) for the receiver.

*H. R. Bygrave*, for the intervenor.

CARROLL, J. These proceedings arise under an intervening petition to foreclose certain mortgages upon property held by the receiver appointed by the Superior Court. The

case was sent to a master. A decree was entered for Frank D. McKendall, the petitioner. The receiver appealed.

The first mortgage was to secure a note given by Roseland, Incorporated, to the Cosmopolitan Trust Company of Providence, Rhode Island, in the sum of $35,000. The second mortgage in the sum of $30,000 was to secure a note issued by Roseland, Incorporated, to Frank D. McKendall. The third mortgage in the sum of $5,000 was to secure a note to John J. Nichols. The three mortgages were dated November 28, 1923. The first and third mortgages were assigned to the petitioner.

Roseland, Incorporated, a Massachusetts corporation, was organized September 4, 1923. John J. Nichols had substantially complete ownership of the common stock of the corporation. He also controlled the H. O. Rogers Silver Company; aside from one or two fictitious stockholders, "there were no other parties in real interest in the H. O. Rogers Silver Company." In 1921 Nichols began the erection of an amusement establishment which later became the property of Roseland, Incorporated. The master found that the money used by Nichols to erect the Roseland structure was procured by him either from the H. O. Rogers Silver Company or by means of its credit. In 1923, a part of the banking business of this company was done with the Cosmopolitan Trust Company of Rhode Island, and, while the work of building Roseland was in progress, Nichols endeavored to finance the proposition by "the use of bad checks" and overdrew the H. O. Rogers Silver Company's account in the Cosmopolitan Trust Company to the extent of $73,000. In November, 1923, the bank commissioner of Rhode Island took charge of the affairs of the Cosmopolitan Trust Company and discovered the extent to which the H. O. Rogers Silver Company had overdrawn its account. McKendall at the time was president of the trust company and probably knew, or should have known, of the transactions, and on November 27, he agreed to assume responsibility for the overdrafts, and Nichols agreed to furnish whatever security he could. The following day two of the mortgages were authorized at a meeting of the stockholders

of Roseland, Incorporated. The Roseland building was constructed on land owned by Nichols. On September 23, 1923, Nichols transferred the title to the land to the Roseland corporation and the financing of the corporation continued to be done through the H. O. Rogers Silver Company account.

On November 28, Roseland, Incorporated, had no creditors "except such a claim as the H. O. Rogers Silver Company may have had against it as a result of the use of its credit and money." The indebtedness of Roseland, Incorporated, to other creditors was incurred after the mortgages were delivered. On November 28, at a meeting of the stockholders of Roseland, Incorporated, all the stockholders being present, it was voted to borrow $35,000 and to execute a note therefor, secured by a mortgage on its property. It was also voted at this meeting to borrow $30,000 and to deliver a note therefor, secured by a second mortgage on its property. The two mortgages were then executed and delivered. On the same date a mortgage previously authorized was issued to Nichols for the purchase price of a lot of land adjoining the property then held by Roseland, Incorporated. To secure McKendall for taking up the H. O. Rogers Silver Company's bad checks, in addition to the first and second mortgages Nichols turned over to him a $5,000 mortgage. On December 12, 1923, Nichols, Roseland, Incorporated, and the H. O. Rogers Silver Company made an agreement in writing with McKendall by which McKendall was to make good the money due the trust company. Nichols in return agreed to liquidate the advances made by McKendall. The master found that McKendall has in every way complied with his part of the agreement; that the trust company transferred to him the mortgages given to it; that he holds the mortgages for a good and valid consideration paid by him; that the mortgages were given by Roseland, Incorporated, by authority of its votes, in order to borrow money to pay the indebtedness of the corporation. The master further found that the mortgages were given to pay the debt incurred for the money advanced by the H. O. Rogers Silver Company; that the $5,000 mortgage was to secure a loan of September 15, 1923,

by Nichols to the corporation; that the three mortgages were given for no other purpose than to meet the outstanding indebtedness of Roseland, Incorporated.

On these findings of the master we perceive no reason which prevents the petitioner from foreclosing his mortgages. They were founded on a good and valid consideration. Roseland, Incorporated, was the real debtor.   By means of the Cosmopolitan Trust Company and the H. O. Rogers Silver Company, the land was purchased and the buildings erected.   Nichols used the money he received from the bank to build the structures and conveyed the entire property to the corporation.   It continued to be financed through Nichols and the trust company after its organization.   The decree for the petitioner, therefore, was right.

There is nothing in the subsidiary findings to contradict the finding that there was a valid consideration for the mortgages.   The finding, "Whether this indebtedness of Roseland, Incorporated, was incurred subsequent to the date of its incorporation cannot be said with any certainty, as the erection of Roseland extended over a substantial period prior to the incorporation of Roseland, Inc.," was not enough to contradict the finding that there was a consideration for the mortgages.

The transaction was not *ultra vires* the Roseland company. It owed a debt.   It could secure its creditor.   There was nothing beyond its chartered power in securing the mortgagee for the advances made.   The agreement was not an accommodation one.   It was founded on a consideration.

*Decree affirmed.*